UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN RAYMOND DOMINICK, | § | |
| No. 821763, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-1271-G |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

    Type of Case:  This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

    Parties:  Petitioner Stephen Raymond Dominick ("Dominick" or "Petitioner") is confined at the Connally Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Kenedy, Texas.  Respondent is the Director of the TDCJ-CID.

    Statement of the Case:  Dominick pled not guilty in cause number F-97-03534-IS to the offense of capital murder.  The State did not seek the death penalty, and after the jury found him guilty of capital murder, he received an automatic life sentence.

    Petitioner appealed his sentence to the Fifth District Court of Appeals and on November

17, 1999, the court affirmed the trial court's judgment. *Dominick v. State*, No. 05-98-00148-CR (Tex. App.-Dallas Nov. 17, 1999). Dominick's petition for discretionary review ("PDR") was refused by the Texas Court of Criminal Appeals on May 26, 2000.

On May 21, 2001, pursuant to Texas Code of Criminal Procedure article 11.07, Dominick filed a habeas application challenging his conviction. *Ex parte Dominick*, Appl. No. 61,399-01 at 2. After an evidentiary hearing, the trial court found Dominick's claims to be without merit, and recommended that habeas relief be denied. *Ex parte Dominick*, Appl. No. 61,399-01 at 103. On April 27, 2005, the Texas Court of Criminal Appeals denied Dominick's application without written order on the findings of the trial court after a hearing. *Ex parte Dominick*, Appl. No. 61,399-01 at cover.

Petitioner filed the instant petition on June 22, 2005. On September 23, 2005, Respondent filed his answer contending that all of Dominick's claims are without merit. Dominick filed his traverse on September 28, 2005.

<u>Findings and Conclusions</u>:  Review of Dominick's claims is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition after the effective date of the AEDPA. The AEDPA, in pertinent part, provides that a federal court cannot grant relief under § 2254 of the act unless the adjudication of a state prisoner's claim in the state court system, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C § 2254(d)(1)-(2) (1996). Findings of fact made by a state court are

2

presumed to be correct absent clear and convincing evidence rebutting the presumption. § 2254(e)(1). Where a petitioner challenges a state court's application of federal law under § 2254(d)(1), the petitioner must also show that the state court's decision was not only erroneous, but objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 1521 (2000)); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 421 (2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable.").

Dominick, in his sole ground of error, argues that he was denied due process of the law because: (1) the State suppressed evidence that its "key" witness, co-defendant Reginald Cardell ("Cardell"), had been promised leniency in exchange for his testimony, and (2) the State presented perjured testimony because Cardell denied that he had been offered leniency in exchange for his testimony. Respondent asserts that Petitioner has wholly failed to demonstrate that the state court's findings of fact, which were signed after the trial court held an evidentiary hearing, are unreasonable.

**Reginald Cardell's Testimony**

The evidence presented at trial is thoroughly and accurately summarized in the direct appeal briefs of Petitioner and the State. Although the prosecution's case was not based solely on the testimony of Reginald Cardell, suffice it to say that he was the most important witness for the prosecution, having been present with Petitioner at the scene of the dual murders, corroborating the testimony of others as to the motives for the murders and testifying to the absence of remorse exhibited by Dominick after the murders were committed.

3

**Denial of Due Process**

Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1197 (1963), a prosecutor is guilty of misconduct when he or she fails to turn over evidence to the defense that is favorable to the accused. A defendant, who has the burden of proving that a *Brady* violation occurred at trial, must establish that: (1) the prosecution suppressed evidence, (2) the suppressed evidence was favorable to the defense and (3) prejudice ensued. *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004). Prejudice occurs where "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 478.

Dominick alleges that the State, specifically prosecutor Tom D'Amore ("D'Amore), entered into a secret plea agreement with Cardell whereby Cardell would receive consideration for his testimony. Petitioner further alleges that D'Amore permitted Cardell to perjure himself in open court by denying the existence of a secret agreement.

Evidence of an "understanding or agreement as to future prosecution" is relevant to the credibility of a witness who testifies on behalf of the State at trial. *See Giglio v. United States*, 405 U.S. 150, 154-155, 92 S. Ct. 763, 766 (1972). Where the witness' testimony "may well be determinative of guilt or innocence," nondisclosure of such an agreement or understanding violates *Brady* and constitutes a denial of due process. *Id.* at 154, 92 S. Ct. at 766 (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959)); *see also East v. Johnson*, 123 F.3d 235, 239 (5th Cir. 1997) ("[W]hen the withheld evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence has been found to be material.") (citation omitted).

However, evidence that the State sought a "lighter" sentence against a codefendant after

4

the codefendent testified does not conclusively establish the pre-trial existence of an agreement or understanding as to the future prosecution of the cooperating defendant. *See Williams v. Coyle*, 260 F.3d 684, 707 (6th Cir. 2001). Likewise, "the simple belief by a defense attorney that his client may be in a better position to negotiate a reduced penalty should he testify against a codefendant is not an agreement within the purview of *Giglio*." *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994); *see also Voyles v. Watkins*, 489 F. Supp. 901, 906 (D.C. Miss. 1980) (noting that an "expectation that leniency might be shown" differs from an express or implied agreement as to the future prosecution of a testifying witness).

If a prosecutor has entered into an agreement with a cooperating witness, it would further violate the holding in *Giglio* to either present or fail to correct false testimony regarding the existence of such an agreement. *See Giglio*, 405 U.S. at 153-54, 92 S. Ct. at 766. Where a petitioner argues that false testimony was presented, the petitioner bears the burden of proving that: (1) the witness testified falsely, (2) the prosecution offered the testimony knowing it was false, or failed to correct the false testimony, and (3) the testimony was material. *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002). The materiality of the testimony is judged by whether "the false testimony could...in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 153-54, 92 S. Ct. at 766 (quoting *Napue*, 360 U.S. at 271, 79 S. Ct. at 1178). Obviously, proof of a pre-existing "understanding or agreement as to future prosecution" between the testifying witness and the prosecution is a *sine qua non* for the remaining due process claims since, absent an agreement, no *Brady* violation is present, nor would there be a basis for the knowing use of perjured testimony.

In its findings following the evidentiary hearing, the state district court found *inter alia*

that: (1) "The Court finds that there was no deal or agreement made by the State in exchange for Mr. Cardell's testimony against the Appellant;" (2) "The Court finds that no written or oral agreement was made by D'Amore [the prosecutor] in exchange for Mr. Cardell's testimony" and (3) "The Court finds that there was no unspoken understanding that Mr. Cardell would receive leniency or have his cases (*sic*) dismissed if he testified against the applicant." *Ex parte Dominick*, Appl. No. 61,399-01 at 102-103. In its conclusions of law, the district court further found that: (1) "The Court concludes that the Applicant has failed to meet his burden on his allegations;" (2) "The Court finds that since there was no agreement, there was nothing for the State to disclose to defense counsel" and (3) "The Court concludes that the accomplice witness, Reginald Cardell, did not commit perjury when he testified that there was no agreement." *Ex parte Dominick*, Appl. No. 61,399-01 at 103. As noted above, the Texas Court of Criminal Appeals denied the application on the trial court's findings. *Ex parte Dominick*, Appl. No. 61,399-01 at cover.

Dominick argues that the finding that there was no agreement or understanding that Cardell would receive leniency or other consideration for his testimony constitutes an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1). As noted above, findings of fact made by a state court are presumed to be correct absent "clear and convincing" evidence rebutting the presumption. *See* § 2254(e)(1).

The evidence before the court in Dominick's article 11.07 application consisted of the affidavits of prosecutor Tom D'Amore, *Ex parte Dominick*, Appl. No. 61,399-01 at 55-56, the State's investigator David Barger, *Ex parte Dominick*, Appl. No. 61,399-01 at 57-58, and

6

Michael Gregory, Cardell's lawyer, *Ex parte Dominick*, Appl. No. 61,399-01 at 60-61 (executed on Nov. 9, 2001), 75-77 (executed on Apr. 15, 2002), and the testimony of Michael Gregory and Phillip Weatherbee given at the evidentiary hearing on August 15, 2002, *Ex parte Dominick*, Appl. No. 61,399-01 at 109-168.[1]

With the exception of certain comments made by Michael Gregory in telephone conversations between him and Petitioner's habeas counsel, Randy Schaffer, which were surreptitiously recorded by Schaffer, *Ex parte Dominick*, Appl. No. 61,399-01 at 176-84 (Exhs. G and H), there is no evidence that Cardell's trial testimony was given in exchange for a promise of leniency.

After Gregory testified at the evidentiary hearing that there was no deal given to Cardell by the prosecutor, Schaffer sought to impeach his testimony with the statements made in the recorded conversation.[2] *Ex parte Dominick*, Appl. No. 61,399-01 at 144 *et seq*. However, Gregory remained firm in his testimony that Cardell knew that there was no deal on the table and that he never conveyed any offer to Cardell.[3] *Ex parte Dominick*, Appl. No. 61,399-01 at 152.

---

[1] The state court also had available the testimony of Cardell with reference to the issue of promises, (Rep.'s R. v. 5 at 61-63), and the statements of his attorney, Mr. Gregory in the *sub rosa* hearing, (Rep.'s R. v. 5 at 64-66), and Cardell's testimony before the jury, (Rep.'s R. v. 5 at 68-69).

[2] A review of the transcript discloses a studied lack of candor in fairly advising Gregory of the purposes of the initial telephone conversation. The state court found that "Mr. Schaffer having misrepresented himself to Mr. Gregory, it is not inconceivable that Mr. Gregory would have made misrepresentations to Mr. Schaffer." *Ex parte Dominick*, Appl. No. 61,399-01 at 102. In point of fact, Gregory testified that he had made certain false statements in the conversation. *Ex parte Dominick*, Appl. No. 61,399-01 at 149-53. An attorney violates ethical standards when a telephone conversation is recorded without the other person's knowledge. *See* Supreme Court of Texas Professional Ethics Committee, Op. 514, 1996 WL 766596 (1996).

[3] It is axiomatic that the rational for the Supreme Court's decision in *Giglio*, *supra*, is predicated on a finding that a promise of favorable consideration was made known to the beneficiary of the promise prior to giving his testimony against another. In the present case, the only evidence before the state court as to Cardell's understanding was that there was no deal.

In addressing the claim in the article 11.07 application, the court made credibility determinations. Specifically, the court found that the statements of the prosecutor and the investigator were credible. *Ex parte Dominick*, Appl. No. 61,399-01 at 102. The court further found the testimony of Phillip Weatherbee to be credible. *Ex parte Dominick*, Appl. No. 61,399-01 at 102. The court found Gregory not to be a credible witness, but did find that his testimony that there was no deal in exchange for Cardell's testimony to be truthful because it was supported by the affidavits of D'Amore and Barger. *Ex parte Dominick*, Appl. No. 61,399-01 at 101-02.[4]

**Federal Habeas Proceedings**

It is clear from the record that Gregory made untruthful statements. Gregory's testimony at both the trial and the evidentiary hearing as well as his sworn statements in his affidavits conflict sharply with the statements he made to Schaffer during their first recorded telephone conversation. The trial court was therefore faced with the difficult decision to accept all, part of or none of the testimony of Gregory. *See*, *e.g.*, *Peña v. Garza*, 61 S.W.3d 529, 532 (Tex. App.-San Antonio 2001, no pet.). The trial court rejected Gregory's unsworn statement that he entered into a "handshake deal" with D'Amore and accepted as truthful Gregory's numerous sworn statements that no agreement existed.

Because the state trial court made credibility determinations after the evidentiary hearing

---

(Rep.'s R. v. 5 at 61-63, 68-69.)

[4] Under Texas state law, factual issues raised in an article 11.07 application may be resolved by affidavits or by an evidentiary hearing, or a combination of the two. These procedures comport with the requirements set out in 28 U.S.C. § 2254(d) as they existed prior to the enactment of the AEDPA. *See*, *e.g.*, *Smith v. Estelle*, 711 F.2d 677, 681 (5th Cir. 1983), *cert. denied* 466 U.S. 906 (1984); *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992), *cert. denied* 596 U.S. 957 (1992) (collecting cases).

and reached the merits of Petitioner's *Brady/Giglio* claims, those findings are afforded "substantial deference" under the AEDPA.  *See* § 2254(d)(2), (e)(1); *see also Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir.2005) (noting that a district court "may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings").  Under § 2254(e)(1), the state court's factual findings are "presumed to be correct" and may only be rebutted by "clear and convincing evidence."  Where the state court reaches the merits of a petitioner's claims, as it did in this case, relief is warranted only if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2).  The trial court's decision to accept part of Gregory's testimony was correct, especially in light of the sworn affidavits from D'Amore, and his investigator, Berger, stating that there was no secret agreement.  Therefore, the court's determination that no agreement existed was not unreasonable.  Because the Magistrate Judge finds that the trial court's factual determination regarding the non-existence of a secret plea agreement was not unreasonable, the trial court's legal determination that Petitioner was not denied due process of the law was not unreasonable.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the district court deny the petition on the merits.

Signed this 24th day of April, 2006.

                                                    Wm. F. Sanderson Jr.
                                                    United States Magistrate Judge

NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.